**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **KEVIN EDWARDS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO. 08-663-GPM** |
| | ) | |
| **JOHN EVANS,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

Kevin Edwards, was convicted of first-degree murder and sentenced to 20 years imprisonment.  On September 23, 2008, he filed a  petition for habeas corpus relief and after receiving an extension to file a reply, he instead  moved to amend his petition.  That  motion was denied and he was ordered to file his reply by August 31, 2009, which he failed to do.  The case is ready to be decided and the petition is denied for the reasons that follow.

<u>FACTS</u>

The following facts come from the Illinois Fifth District Appellate Court's Rule 23 Order denying Mr. Edwards's direct appeal (Doc. 14, Ex. A).

Mr. Edwards was convicted of killing his estranged wife's lover, Clarence Jordan, on December 18, 1999.  Mr. Edwards and his wife, Latasha, had ongoing marital problems.  In November 1999, after several failed attempts at reconciling, Mr. Edwards moved out of their apartment in Belleville, Illinois, taking some furniture, including their bed.  Latasha continued to live in the apartment with their young daughter (Ex. A at 6-8).

Page 1 of  15

On the evening of December 17, 1999, Mr. Edwards and Latasha attended a basketball game and did some Christmas shopping. At some point, Latasha received a page from Clarence Jordan; she told Mr. Edwards the page was from her sister. Latasha then dropped Mr. Edwards off at his parents' house and told him she was going to pick up her sister at the Metrolink station. Mr. Edwards expected Latasha would return to his parents' house later. Latasha instead met Jordan at the Metrolink station and they went to Latasha's sister's home where Latasha left her car. Latasha and Jordan then took Jordan's car to Latasha's apartment where they spent the night. Because Mr. Edwards had previously removed the bedroom furniture from the apartment, they slept on the floor (Ex. A at 1-2).

Shortly after 6:00 a.m. on December 18, 1999, Latasha heard a door open, but she did not think it was the door to her apartment. Latasha and Jordan were lying naked on the bedroom floor. Suddenly, Latasha saw Mr. Edwards standing over her with a rifle. According to Latasha, Mr. Edwards said, "Your sister told me you was [sic] fucking Dre [(a prior lover of Latasha's)]." Mr. Edwards then turned and shot Jordan (Ex. A at 2). The state's evidence established that the murder weapon was an SKS rifle, which is a semiautomatic assault rifle (Ex. A at 4).

According to Mr. Edwards, he and Latasha had separated in July 1999, because Latasha was seeing a man named Dre. They reconciled but then separated again in November 1999, at which time Mr. Edwards moved out of their apartment. Mr. Edwards testified that he bought the SKS rifle for a "trophy" a few months before December 1999. He put the rifle under the loveseat in his parents' house without their knowledge. However, on December 16, 1999, Mr. Edwards's mother discovered his rifle and told Mr. Edwards to get the rifle out of her house immediately (Ex. A at 5, 7).

Mr. Edwards testified that on the evening before the murder, his father was drunk and angry

that Mr. Edwards had not yet removed the rifle.  As such, Mr. Edwards put the rifle into a black

duffle bag and hid it in the woods outside his parents' house.  Mr. Edwards then attempted to contact

Latasha several times.  When Latasha did not return his calls, he drove to Latasha's sister's home

around 1:30 a.m. on December 18, 1999, where he saw Latasha's car.  Latasha's sister, Beatrice, told

him that Latasha was out with female friends.[1]  Around 5:45 a.m., Mr. Edwards left Beatrice's home

and returned to his parents' home.  He picked up the keys to Latasha's apartment and retrieved the

rifle from the woods.  He testified that he intended to go to Latasha's apartment to "get some sleep

and to secure the rifle there."  He further testified that he did not expect to find anyone there, that he

did not know about Jordan, and that he was not angry (Ex. A at 7-8).

        After letting himself into the apartment, Mr. Edwards first looked into his daughter's bedroom

because he knew his daughter was not there, and he thought that if Latasha were home she would be

sleeping in their daughter's bed.  He then heard a noise from behind the closed door of the master

bedroom, and thought that someone had broken into the apartment, although he admitted that there

was no sign of forced entry.  He took the gun out of the duffle bag and opened the bedroom door.

He then saw Latasha and Jordan lying naked on the floor.  According to Mr. Edwards, Jordan started

to get up and said, "What the fuck?"  In response, Mr. Edwards claimed he did not say anything, but

that he "automatically pulled the trigger."  He explained that shooting the rifle was not an accident,

but was the result of many emotions in that he was very tired, he thought that someone had broken

into the house, and he feared for his safety because Jordan was "jumping up so fast" (Ex. A at 8).

        According to Latasha, Mr. Edwards then pointed the gun at her and demanded that she leave

_____

[1] Beatrice did not testify at trial.  The parties stipulated that a detective had searched for Beatrice
shortly before trial but was unable to locate her. She had moved, and her family lost contact with her
(Doc. 14, Ex. A, p. 5).

with him (Ex. A at 2).  According to Mr. Edwards, he simply told Latasha that he was leaving, and she voluntarily went with him.  First, they went to Mr. Edwards's uncle's home where he left the rifle and duffle bag without his uncle's knowledge.  Next, they went to Mr. Edwards's cousin's house. His cousin gave him money and took him to the bus station in St. Louis.  Mr. Edwards then stayed in a hotel in St. Peters, Missouri, until December 21, 1999, when he turned himself in to the police (Ex. A at 9).

### PROCEDURAL HISTORY

Mr. Edwards's conviction was affirmed on direct appeal.  His petition for leave to appeal (PLA) to the Illinois Supreme Court was denied.  He then filed a petition for postconviction relief. After appointed counsel filed an amended petition, the court granted the state's motion to dismiss (Doc. 14, Exs. H, I, J).  The dismissal was affirmed (Doc. 14, Ex. N), and the PLA was denied on November 29, 2007 (Doc. 14, Ex. R).

While the appeal from the dismissal of the postconviction petition was pending, Mr. Edwards filed a successive postconviction petition (Doc. 14, Ex. S).  It was summarily dismissed.  Mr. Edwards appealed, and his appointed counsel moved to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987) (Doc. 14, Ex. T).  Counsel's motion to withdraw was granted, and the Appellate Court affirmed the dismissal in a Rule 23 Order (Doc. 14, Ex. V).  Mr. Edwards's successive PLA was denied on September 24, 2008 (Doc. 14, Ex. X).

### GROUNDS FOR HABEAS RELIEF

Mr. Edwards asserts the following grounds for habeas relief:

(1)    His conviction for first-degree murder was against the manifest weight of the evidence.
(2)    Trial counsel was ineffective for failing to introduce evidence in support of second-degree murder or involuntary manslaughter.

(3)     The trial court erred by failing to instruct the jury on adultery, and appellate counsel was ineffective for failing to raise this issue on direct appeal.

(4)     The trial court's response to jury notes seeking clarification of "sudden and intense passion" failed to provide the jury with a proper understanding of the law with respect to second-degree murder.

(5)     Trial counsel was ineffective for failing to request additional jury instructions defining adultery and the parameters of adultery, and counsel on direct appeal was ineffective for failing to raise trial counsel's failure.

(6)     Trial counsel was ineffective for agreeing to the trial court's response to the jury notes referred to in Ground Four, and appellate counsel was ineffective for failing to raise trial counsel's error on direct appeal.

## ANALYSIS

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA).  "The [AEDPA] of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).  Habeas is not another round of appellate review.  Federal courts do not review state-court determinations of state-law questions on habeas review.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bloyer v. Peters*, 5 F.3d 1093, 1098 (7th Cir. 1993).  Rather, 28 U.S.C. § 2254(d) restricts habeas relief to cases wherein the state-court determination resulted in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

### 1) PROCEDURAL DEFAULT

Mr. Edwards must clear two procedural hurdles before the court may reach the merits of his habeas corpus petition: exhaustion of remedies and procedural default.  *Rodriguez v. Peters*, 63 F.3d 546, 555 (7th Cir. 1995).  "Before a federal court may grant habeas relief to a state prisoner, the

prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "[S]tate prisoners must give the state court one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845; *see also* 28 U.S.C. § 2254(c). In *O'Sullivan v. Boerckel*, the Supreme Court specifically addressed exhaustion under Illinois's two-tiered appellate process, holding that issues must be raised not only to an intermediate appellate court, but also to the Illinois Supreme Court, which offers discretionary review (except under a limited number of special circumstances not applicable here). *O'Sullivan*, 526 U.S. at 843-46.

Mr. Edwards can circumvent this bar to review if he is able to demonstrate cause for his procedural error and establish prejudice resulting from that error, i.e., "cause and prejudice." *Howard v. O'Sullivan*, 185 F.3d 721, 726 (7th Cir. 1999); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "Cause for a default is ordinarily established by showing that some type of external impediment prevented the Mr. Edwards from presenting his federal claim to the state courts." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). In order to demonstrate prejudice, Mr. Edwards must show that the violation of his federal rights caused him actual and substantial prejudice. *Id*.

Mr. Edwards has cleared the first procedural hurdle, exhaustion. He has exhausted all available avenues of relief through the Illinois system in that he is time barred from further pursuing the alleged constitutional errors in a state postconviction proceeding. *See* 725 ILCS 5/122-1(c); *see also O'Sullivan*, 526 U.S. at 844 (holding that repetitive petitions are not required).

Respondent contends that Ground Five is defaulted because it was not presented to the Illinois Supreme Court. A procedural default will result when a claim is not fully or fairly presented to the state courts. *See Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999). A claim has been "fully"

presented when a petitioner has pursued "all available avenues of relief provided by the state before turning to the federal courts." *Id.* (quoting *Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir. 1998)). "Fair presentment requires the petitioner give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Id.* (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Further, "[f]or a constitutional claim to be fairly presented to a state court, both the operative facts and the 'controlling legal principles' must be submitted." *Id.* (quoting *Picard*, 404 U.S. at 275). Mr. Edwards admits that he did not raise this ground in his PLA to the Supreme Court on his postconviction petition (Doc. 1 at ¶ 14). As such, this claim was neither fully nor fairly presented to the state courts; therefore, it is procedurally defaulted.

As cause for his failure to do so, Mr. Edwards attaches the affidavit of an attorney who represented him on appeal from the dismissal of his postconviction petition, explaining that the point was omitted from the PLA due to page limitations and because counsel felt it was a comparatively weak point. There is no constitutional right to counsel whatsoever on his postconviction petition, *Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir. 1998), or on the preparation of the petition for leave to appeal, *Anderson v. Cowan*, 227 F.3d 893, 901 (7th Cir. 2000). Therefore, the Court rejects Mr. Edwards's contention that the omission of the point from the PLA was ineffective assistance of counsel. This justifiable tactical legal decision by counsel, to whom Mr. Edwards had no constitutional right, does not constitute cause for his failure to present this ground to the Illinois Supreme Court.

Respondent however concedes that the other five points were fully and fairly presented in the state courts. Thus, Mr. Edwards's five remaining points will herein be considered on the merits.

## 2) First Ground (Sufficiency of the Evidence)

Mr. Edwards's first claim is that his conviction was "against the manifest weight of the evidence." A weight-of-the-evidence claim, as opposed to a sufficiency-of-the-evidence claim, cannot be considered on habeas because it does not raise a constitutional issue. *See Tibbs v. Florida*, 457 U.S. 31, 41-43 (1982). A claim of insufficiency of the evidence, on the other hand, raises a due process claim. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). Arguably, Mr. Edwards meant to state a claim for insufficiency of the evidence, since he refers to a denial of due process in his first point, and the claim was stated as a sufficiency claim in state court.

On a challenge to the sufficiency of the evidence, the issue is not whether the court believes that the evidence established that defendant is guilty beyond a reasonable doubt. Rather, the court "must construe that evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003) (citing *Jackson v. Virginia*, 443 U.S. at 319).

The state court considered the sufficiency of the evidence claim on direct appeal (Doc. 14, Ex. A, at 9-12). Mr. Edwards argues that the evidence was not sufficient to convict him of first-degree murder because his evidence established that he acted under a sudden and intense passion resulting from serious provocation. He argues that the evidence was only sufficient to convict him of second-degree murder, which defines the relevant mitigating factor as "a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill." 720 ILCS 5/9-2.

The Appellate Court reviewed the evidence in detail and concluded that "the evidence is not so improbable or unsatisfactory that no rational trier of fact could find the defendant guilty of first-

degree murder beyond a reasonable doubt" (Doc. 14, Ex. A at 11).  The Appellate Court recognized that the evidence suggested that Mr. Edwards thought that his wife was sleeping with Dre, that he expected her to return to his parents' house after supposedly picking up her sister, and that, when she did not return, he "purposefully retrieved the gun and took it, fully loaded, to Latasha's apartment. The jury could have understandably concluded that the defendant was not taking the gun to the apartment to be secured there, since the defendant and Latasha were separated at the time." *Id.*

The issue for this Court on habeas review is whether the state court's decision was "contrary to" or constituted an "an unreasonable application of" Supreme Court precedent. 28 U.S.C. § 2254(d) (1).  "Avoiding these pitfalls does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 9 (2002) (emphasis in original).  The Seventh Circuit has noted that the scope of federal review of state-court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1).  *Jackson v. Frank*, 348 F.3d 658, 661 (7th Cir. 2003).  The unreasonable application standard is "a difficult standard to meet." *Id.* at 662.  Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court's application must be "something like lying well outside the boundaries of permissible differences of opinion."  *Id.* (internal citation omitted).

The Fifth District's decision is not an unreasonable application of federal law.  While the Fifth District did not cite *Jackson v. Virginia*, it did explicitly apply the standard espoused in that case, i.e., whether the evidence was so "improbable or unsatisfactory that no rational trier of fact could find the defendant guilty of first-degree murder beyond a reasonable doubt" (Doc. 14, Ex. A at 11).  Mr. Edwards's sufficiency of the evidence claim therefore fails.

### 3) SECOND GROUND (INEFFECTIVE ASSISTANCE: FAILURE TO PRODUCE EVIDENCE OF SECOND-DEGREE MURDER)

Next, Mr. Edwards claims that trial counsel was ineffective in failing to produce evidence that Mr. Edwards committed second-degree murder.  Specifically, Mr. Edwards cites trial counsel's failure to impeach Latasha by introducing evidence that she had told defense counsel that no "conversation" took place immediately before the shooting because everything happened so fast.

A claim of ineffective assistance of counsel is, of course, decided under the familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  The Seventh Circuit has emphasized that, when considering a claim of ineffective assistance of counsel on habeas review, federal courts must honor any "reasonable" state-court decision; "only a clear error in applying *Strickland*'s standard would support a writ of habeas corpus."  *Holman v. Gilmore*, 126 F.3d 876, 881-882 (7th Cir. 1997).  The Supreme Court recently reaffirmed that *Strickland* supplies the applicable standard for assessing the constitutional effectiveness of counsel.  *Bobby v. Van Hook*, 130 S.Ct. 13 (2009).

The Fifth District applied the *Strickland* standard to this claim in its Rule 23 Order on direct appeal (Doc. 14, Ex. A).  The court cited *Strickland* and correctly noted that the analysis is two-pronged: a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687; (Doc. 14, Ex A at 12).

*Strickland* instructs that a "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

In its Rule 23 Order, the Appellate Court concluded that the "alleged error would not have

Page 10 of  15

altered the outcome" (Doc. 14, Ex. A at 12).   The court noted that Mr. Edwards's evidence established that he had discussed with Beatrice the relationship between Latasha and Dre only hours before going to Latasha's apartment with a loaded gun, and that it was "believable" that Mr. Edwards made the statement attributed to him.  Further, the court noted that Latasha's two alleged testimonial statements were not necessarily in conflict:  testifying that Mr. Edwards uttered one sentence before shooting the victim does not necessarily conflict with her alleged statement to counsel that there was not time for a "conversation" before the shooting (Doc. 14, Ex. A at 13).

### 4) THIRD GROUND (FAILURE TO INSTRUCT JURY ON ADULTERY)

Mr. Edwards's third ground for seeking habeas relief is that he was denied due process by the trial court's failure to instruct the jury on the "concept of adultery" and that he reasonably could have suspected that adultery had occurred before he shot Jordan; further, appellate counsel was ineffective in failing to raise these points on direct appeal, and the postconviction court erred in dismissing the petition as to these claims.

The propriety of jury instructions is generally a matter of state law that is not cognizable on federal habeas review.  *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  "Because a state trial court's evidentiary rulings and jury instructions turn on state law, these are matters that are usually beyond the scope of federal habeas review."  *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004).  A claim relating to jury instructions can be considered on habeas review only if it clearly implicates Mr. Edwards's due process right to a fair trial.  *See id.* at 511-12 n.1.

Here, Mr. Edwards's claim does not clearly implicate his right to a fair trial.  The Fifth District rejected these claims in its Rule 23 Order on the first postconviction petition (Doc. 14, Ex. N).  It noted that "the jury was given a full and complete set of relevant instructions, including

[Illinois Pattern Jury Instructions] Criminal 4th Nos. 7.03 and 7.04" (Doc. 14, Ex. N at 9).  The court stated that those instructions contained "accurate statements of the law," including the law on mitigating factors of second-degree murder, and "provided the jury with correct legal principles" (Doc. 14, Ex. N at 9).  Illinois Pattern Jury Instructions (IPI), Criminal, No. 7.03 states that "a sudden and intense passion resulting from serious provocation by the deceased" is a mitigating factor which reduces first-degree murder to second-degree murder (Doc. 14, Ex. N at 7).  That language is taken from the statute defining second-degree murder, 720 ILCS 5/9-2.  IPI Criminal No. 7.04 is the issues instruction for first-degree and second-degree murder, and it also contains the phrase "acted under a sudden and intense passion resulting from serious provocation by the deceased" (Doc. 14, Ex. N at 8).

The jury in Mr. Edwards's case was in fact instructed both on the elements of second-degree murder and on mitigating factors, including the factor of a sudden and intense passion resulting from serious provocation by the deceased.  Mr. Edwards suggests that his right to a fair trial was violated by the trial court's failure to instruct the jury that he "reasonably could have suspected adultery had occurred prior to his shooting the deceased" (Doc. 1 at 14).  But, as the Fifth District observed, adultery in and of itself does not automatically constitute a mitigating factor that reduces first-degree murder to second-degree murder.  Rather, the issue was whether the discovery of adultery caused the defendant to act under a sudden and intense passion.  As the Fifth District aptly put it, "[t]he essential disputed point was whether the defendant was surprised to find his wife and a lover in a compromising position or whether he arrived at the apartment knowing what he would find" (Doc. 14, Ex. N at 10).

### 5) FOURTH AND SIXTH GROUNDS (COURT'S RESPONSE TO JURY NOTES; INEFFECTIVE ASSISTANCE OF COUNSEL IN AGREEING)

These issues were considered by the state appellate court in its Rule 23 Order on Mr. Edwards's first postconviction petition (Doc. 14, Ex. N at 11-13). Further, these issues are intertwined with the third ground, as Mr. Edwards again argues that his due process rights were violated by the lack of an instruction or explanation regarding adultery.

The jury sent out two notes during deliberations. The first was written on the jury's copy of IPI 7.03, the explanation of mitigating factors. The note asked, "Can we get clarification on this statement? Can mitigating factors exist by the <u>deceased</u> <u>only</u>? Can it be anyone other than the deceased?" The second note was written on the jury's copy of the issues instruction, and it asked the court to "please clarify sudden and intense passion" (Doc. 14, Ex. N at 11).

With the agreement of the parties, the court answered both notes with one written response:

Please use your common understanding of the terms contained in the instructions that you referred to in your question. The deceased or the deceased acting with another person can be the cause of sudden and intense passion referred to in the instruction.

(Doc. 14, Ex. N at 11.)

Mr. Edwards argues that the court's response "was reversible error because it failed to provide the jury with a proper understanding of the law governing second-degree murder and denied Mr. Edwards a fair trial" (Doc. 1 at 15). The analysis here is the same as with regard to the third ground. Evidentiary rulings and jury instructions given by a state trial court inevitably turn on matters of state law and, therefore, "are usually beyond the scope of federal habeas review." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004). For a claim relating to jury instructions to be considered on habeas review it must clearly implicate Mr. Edwards's due process right to a fair trial. *See id.* at 511-12 n.1.

The state appellate court rejected Mr. Edwards's claim, finding that the trial court's response

was an accurate statement of the law and was proper as a matter of state law.  The appellate court noted that the instructions at issue consisted of words that have "plain and ordinary meanings," and it was therefore appropriate for the trial court to tell the jurors to rely on their "common understanding of the terms" (Doc. 14, Ex. N at 12-13) (internal quotations omitted).  Since the trial court's response to the jury's notes was appropriate, it follows that counsel was not ineffective for agreeing to it.  *Id*. at 13.  Further, Mr. Edwards does not identify how the appellate court's decision was contrary to, or an unreasonable application of, applicable federal Supreme Court precedent and thus, his claim fails.

Similar to his argument under Ground Three, Mr. Edwards suggests that the trial court should have instructed the jury that "a reasonable suspicion of adultery, occurring prior to the shooting of the deceased, was legally valid under the circumstances" (Doc. 1 at 16).  However, such an instruction would have been a misstatement of Illinois law.  "In Illinois, adultery with a spouse as provocation generally has been limited to those instances where the parties are discovered in the act of adultery or immediately before or after such an act, and the killing immediately follows such discovery."  *People v. Chevalier*, 544 N.E.2d 942, 944 (Ill.1989).  Evidence of a *sudden* passion is required; "a history of marital discord, particularly suspicions of adultery" undermines the defense.  *Id*. at 945.

If, as the jury evidently believed here, Mr. Edwards retrieved his rifle and went to the apartment expecting to find Latasha with another man, then he was not acting under a sudden and intense passion within the meaning of the second-degree murder statute.  Therefore, an instruction which told the jury that he was guilty of only second-degree murder when he found what he had expected to find, i.e., adultery, would have been wrong.  The trial court's failure to give an erroneous

instruction did not violate Mr. Edwards's due process rights.

### CONCLUSION

The petition for writ of habeas corpus is **DENIED**, and the Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  12/17/09

s/ *G. Patrick Murphy*

G. PATRICK MURPHY
United States District Judge